UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

          BARBARA J. BOUCHEY,                    Case No. 10-12207-REL

                          Debtor,             Chapter 11

_____

CLARE W. BRONFMAN &
SARA R. BRONFMAN,

                          Plaintiffs,

v.                                        A.P. No.:  10-_____ (REL)

BARBARA J. BOUCHEY,

                          Defendant.

_____

**VERIFIED COMPLAINT PURSUANT TO 11 U.S.C. §523 TO DENY THE
DISCHARGEABILITY OF A DEBT; PURSUANT TO 11 U.S.C. §727(a)
<u>TO DENY THE DEBTOR A DISCHARGE; AND FOR INJUNCTIVE RELIEF</u>**

      Plaintiffs Clare W. Bronfman and Sara R. Bronfman (collectively, the "Plaintiffs"), by and through their attorneys, Damon Morey LLP, respectfully allege and represent as follows:

<u>**THE PARTIES**</u>

      1.     Plaintiff Clare W. Bronfman is an individual who resides in the State of New York.

      2.     Plaintiff Sara R. Bronfman is an individual who resides in the State of New York.

3.      Defendant Barbara J. Bouchey is a natural person residing in the State of New York, having an address at 16 Silo Place, Waterford, New York.

4.      Defendant filed a Chapter 11 petition in the United States Bankruptcy Court on June 11, 2010 ("the Petition Date") and is the debtor and debtor-in-possession in the above-captioned Chapter 11 case.

5.      Defendant, through her company, Barbara J. Bouchey Asset Management Inc. ("BJBAM"), was the financial manager of and advisor to the Plaintiffs for the period of 2004-2009.

6.      BJBAM is a corporation owned 100% and controlled by the Defendant.

7.      Defendant is a Certified Financial Planner and a securities broker licensed in Series 6, 7, 22, 24, 63, as well as brokerage licenses for life insurance, disability and long-term care and was the only individual within BJBAM which held such licenses.

## D JURISDICTION AND VENUE

8.      This adversary proceeding ("Adversary Proceeding") is commenced pursuant to §§523 and 727 of the Bankruptcy Code and Rules 4004, 4007 and 7001 of the Federal Rules of Bankruptcy Procedure.

9.      The Court has jurisdiction over the parties and subject matter of this Adversary Proceeding pursuant to 11 U.S.C. §§523 and 727 and 28 U.S.C. §157.

10.     Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.

## GENERAL FACTUAL ALLEGATIONS

11.     Defendant is the former financial planner of the Plaintiffs.

12.     Defendant is the former financial advisor of the Plaintiffs.

13.     Defendant was formerly responsible for the financial investments of the Plaintiffs.

14.     Defendant claims she is a sophisticated business-person.

15.     Defendant entered into an oral agreement with Plaintiffs to render services on their behalf.

16.     At no time were any written agreements executed between Plaintiffs and the Defendant.

17.     Plaintiffs paid Defendant substantial fees for her services as a financial planner, broker and advisor.

18.     Upon information and belief, Defendant derived approximately fifty percent (50%) of her income from the financial services she provided to Plaintiffs.

19.     Defendant and Plaintiffs had a fiduciary relationship.

20.     Defendant's services to the Plaintiffs included managing the Plaintiffs' money.

21.     Defendant's services to the Plaintiffs included liquidating investments of the Plaintiffs.

22.     Defendant's services to the Plaintiffs included paying their bills, including legal bills.

23.     Defendant's services to the Plaintiffs included managing the financial aspects of the Plaintiffs' businesses and charitable foundations.

24.     Defendant's services to the Plaintiffs included providing bookkeeping services.

3

25.    Defendant's services to the Plaintiffs included interfacing with the Plaintiffs' tax accountants both for their personal taxes, business taxes and for Plaintiffs' charitable foundation taxes.

26.    Defendant, as a financial planner, is familiar with the Certified Financial Planner Board of Standards, Inc., Standards of Professional Conduct and/or the National Association of Personal Financial Advisors ("Professional Standards").

27.    Each of these Professional Standards has a code of ethics with principles involving confidentiality, professionalism, integrity, fairness, objectivity, competence and diligence.

28.    Based on the Professional Standards and her fiduciary duties under common law, Defendant owed the Plaintiffs various duties including the duty of confidentiality.

29.    As will be described hereafter, Defendant engaged in wrongful acts of sabotage against, *inter alia*, the Plaintiffs' businesses and business interests.

30.    Defendant failed to disclose various conflicts of interest to Plaintiffs.

31.    Defendant did not provide Plaintiffs with impartial judgment, free of the influence of other third parties.

32.    Coinciding with her tenure as financial planner and advisor to the Plaintiffs, the Defendant was also involved with an organization, NXIVM Corporation, formerly known as Executive Success Programs, Inc. ("NXIVM").

33.    NXIVM offers various courses and programs to advance human potential and ethics through personal and professional development.

34.    Until about April 2009, Defendant participated in NXIVM's curriculum, provided instruction at NXIVM classes, and is a former member of NXIVM's Executive Board.

35.    At all times herein relevant, Plaintiffs were members of NXIVM's Executive Board.

36.    Upon information and belief, on April 24, 2009, Defendant authored two e-mails, in part or in whole, one to the Executive Board of NXIVM, and another to Nancy Salzman and Keith Raniere ("April 24, 2009 emails" or "Extortion Emails").

37.    Upon information and belief, Defendant consulted an attorney in the preparation of the April 24, 2009 emails.

38.    The April 24, 2009 emails were signed by Defendant.

39.    The April 24, 2009 emails were sent by Defendant on behalf of herself and eight other named individuals.

40.    One of the two April 24, 2009 emails stated "We are requesting a response to this letter by 11:59 PM, Saturday, April 25, 2009.  We are requesting a written, signed, notarized contract agreeing to the below amounts by 11:59 PM, Sunday, April 26, 2009. We are requesting a Cashier's Check for the total amount due of $2,088,000 by Thursday, April 30, 2009.  If these requests are not met we will move forward by contacting the Press."

41.    The April 24, 2009 emails were an attempt to extort over $2.0 million from Plaintiffs and others.

42.    During this time, Defendant had inside information of Plaintiffs' financial relationship with NXIVM.

43.     As a member of NXIVM's Executive Board and Plaintiff's financial advisor, Defendant knew NXIVM's financial condition and that they had no available assets were dependent on Plaintiffs' financial support.

44.     Upon information and belief, although the two emails were directed to NXIVM's Executive Board and Nancy Salzman and Keith Raniere, Defendant intended the extortion demands to be satisfied by the Plaintiffs.

45.     The extortion demand contained in the April 24, 2009 emails was rebuffed by Plaintiffs and others.

46.     Shortly after the April 24, 2009 emails, the Plaintiffs terminated their business relationship with Defendant and her business entities.

47.     Upon the termination of Plaintiffs' business relationship with Defendant, Defendant did not immediately surrender or return to Plaintiffs their confidential and business information.

48.     After the termination of Plaintiffs' business relationship with Defendant, Defendant acted in various ways, as set forth herein, directly in breach of her fiduciary duties to cause damage to and destroy Plaintiffs and Plaintiffs' business interests and business.

49.     Upon information and belief, Defendant relied on others, unbeknownst to Plaintiffs, for financial advice in directing the Plaintiffs' investments.

50.     Upon information and belief, during the Defendant's representation of Plaintiffs, Defendant was seeking financial advice from other third parties.

51.     Upon information and belief, Defendant solicited, organized, collaborated and conspired with former members of NXIVM and others to form a group that they

designated as "the Roses" having as its stated and agreed purpose to sabotage NXIVM and the Plaintiffs who Defendant closely associated with NXIVM.

52.    Upon information and belief, one of the purposes of the "Roses" is to disseminate confidential financial information about Plaintiffs.

53.    Upon information and belief, Defendant gave several members of the "Roses" access to Plaintiffs' confidential information.

54.    Upon information and belief, another purpose of the "Roses" was to cause harm to Plaintiffs, Plaintiffs' business and business interests.

55.    Upon information and belief, another purpose of the "Roses" was to cause damage to Plaintiffs, Plaintiffs' business and business interests.

56.    Defendant produced Plaintiffs' documents to third parties.

57.    Defendant shared Plaintiffs' documents with third parties.

58.    Defendant entrusted Plaintiffs' documents to third parties.

59.    Defendant produced documents and additional unsolicited testimony to litigants adverse to Plaintiffs in other pending lawsuits to retaliate against Plaintiffs for having terminated her services as their asset manager and financial advisor and in order to publicly humiliate them and disparage their business dealings.

60.    In approximately 2007, Plaintiffs entered into a joint business venture with the Plyams, known as Precision Development LLC.

61.    Defendant was responsible for all financial transactions involving Precision Development LLC.

62.    On or about January 25, 2008 Plaintiffs commenced a civil action in the State of California captioned *Precision Development, LLC v. Plyam*, et al, No. BC 384285 (Los Angeles Superior Court) ("*Plyam* Litigation").

63.    Defendant, who was not a party to the *Plyam* Litigation, had a significant role in the *Plyam* Litigation on behalf of the Plaintiffs.

64.    At the commencement of the *Pylam* Litigation, Defendant was employed by Plaintiffs.

65.    In about June 2009, the Defendant was subpoenaed and deposed in Albany by the Plyams (adversaries of the Plaintiffs) in the *Plyam* Litigation.

66.    Defendant admitted that she met with the Plyams' lawyer before her deposition.

67.    Defendant communicated and/or discussed confidential information relating to the Plaintiffs' investments to the attorney for the Plaintiffs' adversary in the *Plyam* Litigation.

68.    The Plaintiffs' counsel in the *Plyam* Litigation issued a subpoena to Defendant which sought production of Plaintiffs' documents.

69.    The subpoena was subsequently withdrawn.

70.    Defendant ignored the withdrawal of the subpoena and, without any safeguards to her former clients, toward whom she still owed duties of confidentiality, and in furtherance of her intent to sabotage the Plaintiffs, Defendant delivered 21 boxes of Plaintiffs' confidential financial and business documents to the Plyams' attorney.

71.    This disclosure to Plyams' attorney was made in January 2010, more than six months after her business relationship was terminated by Plaintiffs, and two years

after the *Pylam* case was filed Defendant produced 21 boxes of financial and business information.

72.     The majority of the financial information contained within the boxes did not relate to the lawsuit.

73.     The information Defendant turned over to Plaintiff's adversaries contained confidential financial information, including but not limited to account numbers and security codes, related to Plaintiffs' other businesses and personal ventures.

74.     The information Defendant turned over to Plaintiffs' adversaries also contained confidential and proprietary information related to NXIVM.

75.     Defendant did not take measures to safeguard her former clients' financial and business information, rather she intentionally and maliciously set out to purportedly use the court system to sabotage Plaintiffs' business dealings and interests and their reputations.

76.     In February 2010, Defendant voluntarily provided Plaintiffs' adversary in the Plyam Litigation with a declaration in support of the Plyams' motion to amend the complaint ("Third Amended Complaint").

77.     The Third Amended Complaint contained Plaintiffs' personal and business financial information.

78.     On or about February 16, 2010, Defendant directly or indirectly caused her Declaration to be publicly filed in the Superior Court in California in support of the Third Amended Complaint.

79.     The Declaration in support of the Third Amended Complaint was signed by Defendant.

80.     The Declaration in support of the Third Amended Complaint was unrelated to any pending motion and was not filed under seal.

81.     The filing of the Declaration was in breach of the fiduciary obligations owed to Plaintiffs.

82.     Attachments to the Declaration contained Plaintiffs' private and confidential financial information, well beyond the investment at issue in the *Pylam* Litigation.

83.     Defendant attached to the Declaration confidential files that she obtained as the Plaintiffs' fiduciary agent and financial advisor including portions of the files she had delivered, as well as attorney-client communications and details of a highly confidential business ventures involving the Plaintiffs and NXIVM.

84.     Defendant's disclosure of these confidential personal financial records and communications, as well her further Declaration publicly filed with the California Superior Court in the *Plyam* Litigation to which she annexed additional confidential information, launched a frenzy of defamatory reporting in the media which caused Defendants' desired harm to the Plaintiffs.   These disclosures continue to harm the Plaintiffs.

85.     The Defendant intentionally, willfully and maliciously disclosed confidential information of the Plaintiffs without taking reasonable and appropriate steps to safeguard the confidentiality of the information and records.

86.     As a result of these prejudicial disclosures by Defendant, the Plaintiffs commenced a separate action in the State of California on February 25, 2010 captioned

*Bronfman v. Bouchey*, Docket BC 432595 (Superior Court, Los Angeles County) seeking injunctive and other relief against the Defendant ("California Lawsuit').

87.     In the California Lawsuit, the Plaintiffs alleged that Defendant (1) breached the fiduciary duties she owed to the Plaintiffs as their financial planner and advisor; (2) invaded the Plaintiffs' privacy; and (3) committed conspiracy to breach fiduciary duties and invade privacy.

88.     The California Lawsuit alleged that the Defendant acted with malice, fraud and oppression to retaliate against her former clients.

89.     On March 3, 2010, the California Superior Court issued a Temporary Restraining Order against Defendant which provided:

> Barbara J. Bouchey, and her agents and all those acting on her behalf, are restrained from conveying any information about financial transactions or bookkeeping entries relating to Clare Bronfman and/or Sara Bronfman's finances, to any person except the Bronfmans or their attorneys themselves or in response to process of law. . . .

90.     On the day that Defendant was to be deposed in the California Lawsuit, June 11, 2010, she filed her Chapter 11 petition in this District, thus staying the California Lawsuit.

91.     On June 11, 2010, the Bankruptcy Court entered a Temporary Restraining Order restraining Defendant from, *inter alia*, "disseminating … any of the Bronfmans' financial records … ."

92.     Thereafter, on the Plaintiffs' motion for relief from the automatic stay within the bankruptcy case, the Bankruptcy Court entered an Order on June 17, 2010 which replaced and superseded the Temporary Restraining Order issued in the California Lawsuit and the Temporary Restraining Order of June 11, 2010, and further provided:

ORDERED, that the CA Action will, by consent, be dismissed without prejudice and not on the merits; and it is further

ORDERED, that the Debtor, her agents and all those acting on her behalf, are restrained and enjoined from conveying, sharing or disseminating any information from or about the financial transactions or bookkeeping entries relating to Clare W. Bronfman and/or Sara R. Bronfman (individually or any entities owned by them) to any person except the Bronfmans, or their attorneys, and it is

ORDERED, this Court's injunction will continue until the later of the following: (a) closure of this Chapter 11 case or (b) the determination(s) of any adversary proceedings filed by Bronfmans, and it is further ….

\* \* \*

ORDERED, that the dismissal without prejudice of the CA Action does not dissolve, impair or affect any rights or remedies the parties may have against each other; and it is

\* \* \*

ORDERED, that the Bronfmans reserve all the rights they may have at law or equity.

93.    Notwithstanding the June 17, 2010 Restraining Order, on information and belief, Defendant continued her pledge to sabotage the Plaintiffs by further disclosures to third parties and the media of confidential information relating to the Plaintiffs.

94.    Despite the June 17, 2010 Restraining Order, Defendant has caused filings in this Court in violation of the Order, which includes information she previously disclosed before the bankruptcy filing.

95.    Additionally, in the *Bronfman v. O'Hara* litigation, A.P. 09-90006 and A.P. 09-90055 (the "*O'Hara* Case") pending in this Court, Defendant produced documents beyond the scope of a subpoena issued by Plaintiffs to the attorney for O'Hara.

96.    The subpoena stated:

Any document (electronic or otherwise), including correspondence, testimony, transcripts, emails, letters, records, copies, memorandums, notes, instructions (of any kind, whether handwritten, typed, or printed), as well as any videotape, audiotape, any type of recording or communications relating to and/or concerning any communications, negotiations or involvement otherwise with Joseph J. O'Hara individually or in relation to his participation in and offering of legal or non-legal advice relating to or concerning Clare W. Bronfman or Sara R. Bronfman or Barbara Bouchey.

Any document (electronic or otherwise), including correspondence, testimony, transcripts, emails, letters, records, copies, memorandums, notes, instructions (of any kind, whether handwritten, typed, or printed), as well as any videotape, audiotape, any type of recording or communications relating to and/or concerning any communications, negotiations or involvement otherwise with Joseph J. O'Hara you have mailed, faxed, emailed, hand delivered or otherwise provided to Joseph J. O'Hara and/or his counsel regarding, concerning or relating to Clare W. Bronfman or Sara R. Bronfman.

Any testimony of Barbara Bouchey concerning or relating (directly or indirectly) to Clare W. Bronfman and/or Sara R. Bronfman.

97.    The subpoena sought three distinct areas of information:    (1) communication concerning any advice of Joseph J. O'Hara to Plaintiffs; (2) information provided to Joseph J. O'Hara and his counsel concerning Plaintiffs; and (3) any testimony Defendant has given regarding Plaintiffs.

98.    Defendant produced information that included confidential financial documents of the Plaintiffs and written communications with several attorneys on behalf of or related to the Plaintiffs, including but not limited to, privileged communications with Damon Morey LLP, the attorneys for the Plaintiffs in the *O'Hara* Case and other litigation matters as well as other unresponsive materials.

99.     The documents the Defendant produced were acquired within her scope of employment as the Plaintiffs' fiduciary.

100.     Upon information and belief, Defendant, a former financial advisor, broker and planer and trusted agent of the Plaintiffs, who remained under a fiduciary duty of confidentiality, communicated directly and regularly with Defendant O'Hara and his attorney in the *O'Hara* Case concerning Plaintiffs.

101.     In a second unrelated lawsuit pending in New Jersey, *NXIVM Inc. v. The Ross Institute* ("*Ross* Action") Defendant was also subpoenaed to produce certain documents.

102.     Plaintiffs are not named parties in the *NXIVM Inc. v. The Ross Institute.*

103.     Although Defendant was represented by counsel in the *Ross* Action, she produced excessive and non-responsive documents directly to opposing counsel, as she had in the *O'Hara* Case and in the *Plyam* Litigation.

104.     The documents Defendant produced were acquired within her scope of employment as the Plaintiffs' fiduciary.

105.     Defendant did not permit the Plaintiffs an opportunity to seek a protective order or any other protections provided by the Federal Rules of Civil Procedure.

106.     In furtherance of Defendant's malicious campaign to sabotage Plaintiffs and Plaintiffs' businesses and business interests, Defendant engaged with local, national and international media outlets, including, but not limited to, The Times Union, Maclean's Magazine, Vanity Fair, New York Post and The Observer.

107.     Upon information and belief, Defendant had at least one discussion with James O'Dato, a writer for the Times Union.

14

108.    Upon information and belief, Defendant had at least one discussion with other writers or reporters of the Times Union.

109.    Upon information and belief, Defendant shared, conveyed and/or provided confidential personal and financial information and/or documentation to James O'Dato and/or the Times Union.

110.    Upon information and belief, Defendant had at least one discussion with reporters and/or writers of Vanity Fair.

111.    Upon information and belief, Defendant shared, conveyed and/or provided confidential personal and financial information and/or documentation to Vanity Fair.

112.    Upon information and belief, Defendant had at least one discussion with reporters and/or writers of Maclean's Magazine.

113.    Upon information and belief, Defendant shared, conveyed and/or provided confidential personal and financial information and/or documentation to Maclean's Magazine.

114.    Upon information and belief, Defendant had at least one discussion with reporters and/or writers of The Observer.

115.    Upon information and belief, Defendant shared, conveyed and/or provided confidential personal and financial information and/or documentation to The Observer.

116.    Upon information and belief, Defendant had at least one discussion with reporters and/or writers of New York Post.

117.    Upon information and belief, Defendant shared, conveyed and/or provided confidential personal and financial information and/or documentation to New York Post.

118.    Upon information and belief, Defendant had at least one discussion with reporters and/or writers of New York Magazine.

119.    Upon information and belief, Defendant shared, conveyed and/or provided confidential personal and financial information and/or documentation to New York Magazine.

120.    Defendant has demonstrated a clear pattern of disregard for any Professional Standards and/or common law duties she owes to the Plaintiffs as a fiduciary and as their trusted financial agent.

121.    These malicious and destructive actions were undertaken by Defendant in furtherance of her stated intention to sabotage NXIVM and the Plaintiffs, and in retaliation for Plaintiffs' termination of her services.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Denial of Discharge Pursuant to 11 U.S.C. §523(a)(4))

122.    Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" through "121" as if more fully set forth herein.

123.    Section 523(a)(4) of the Bankruptcy Code provides as follows:

(a)    A discharge under 727 . . . of [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . (4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

124.    Based on the Professional Standards and her fiduciary duties under common law, Defendant as financial planner and advisor to the Plaintiffs owed the Plaintiffs certain duties as a fiduciary, which continued even after her business relationship with the Plaintiffs terminated.

16

125.    The duties of a fiduciary in Defendant's role as financial planner, broker and advisor include, but are not limited to, a duty of confidentiality, a duty to fully disclose all conflicts of interest, a duty to work with care and loyalty, and duty to work with only his or her clients' best interests in mind.

126.    Plaintiffs retained the services of Defendant based on a mutual understanding of this fiduciary duty.

127.    During Plaintiffs' business relationship with Defendant, Plaintiffs directed that large sums of monies be sent to Plyams to further Plaintiffs' business venture in California, and the transmittal of monies was done through Defendants office, under Defendants' supervision.

128.    Defendant transmitted certain of the monies to the Plyams without Plaintiffs' consent or authority.

129.    Upon information and belief, Defendant later claimed, contrary to her role as Plaintiffs' financial advisor, that she did not manage the monies regarding the Plaintiff's investment with the Plyams.

130.    Defendant later claimed in a deposition, in the Plyam Lawsuit, that she held no fiduciary duties to Plaintiffs.

131.    Either Defendant's statement in the deposition was knowingly false or Defendant fraudulently misrepresented her capacity and duties throughout her business relationship with Plaintiffs.

132.    Defendant also failed to advise  Plaintiffs of certain conflicts of interest in their business relationship.

133.    Defendant represented herself to Plaintiffs as a competent and successful businesswoman.

134.    Upon information and belief, Defendant, while acting in a fiduciary position, was seeking third party advice regarding Plaintiff's finances without Plaintiff's consent or knowledge.

135.    Defendant relied on third party advice instead of her own alleged expertise, which resulted in financial loss to Plaintiffs.

136.    Defendant failed to use her best judgment when advising Plaintiffs.

137.    At all times relevant hereto, Defendant, as a financial planner, broker and advisor to the Plaintiffs gained knowledge of the Plaintiffs' financial affairs, tended to their investments and finances, and thus was a fiduciary and owed Plaintiffs fiduciary duties.

138.    Defendant individually and as principal of BJBAM owed a duty of loyalty to Plaintiffs and was required to act for their benefit and on their behalf rather than for Defendant's own benefit and not against Plaintiffs.

139.    Plaintiffs reasonably relied on Defendant to honor her fiduciary obligations.

140.    Plaintiffs reasonably relied on Defendant to be bound by and uphold the Professional Standards to which the Defendant subscribed as a financial planner.

141.    After the termination of the business relationship, Defendant continued to fail to uphold her duties as a fiduciary.

142.    After the termination of the business relationship, Defendant did not seek Plaintiffs' consent nor did Plaintiffs ever consent to the release of their personal, confidential and financial information.

143.    Upon Plaintiff's termination of their business relationship with Defendant, Defendant failed to return Plaintiff's confidential information, rendering it impossible for Plaintiffs to continue managing and running their businesses and personal affairs for a period of time.

144.    Despite her knowledge that she had a continuing fiduciary obligation to the Plaintiffs, Defendant acted with total disregard of her fiduciary obligations and professional duties, and instead acted in her own self-interest and at the expense of Plaintiffs.

145.    Defendant willfully and wrongfully misappropriated, shared, conveyed and disseminated Plaintiffs' confidential financial and business records, documents and information to various third parties and adversaries of Plaintiffs to further her own self-interests and to sabotage the Plaintiffs.

146.    Upon information and belief, Defendant disclosed Plaintiffs' confidential information to the media for the sole purpose of damaging Plaintiff and furthering Defendant's self interests.

147.    Defendant disclosed Plaintiffs' confidential information to adversarial third parties, including the Plaintiffs' adversaries in the *Plyam* Litigation, the *O'Hara* Case and *Ross* Action, for the sole purpose of damaging Plaintiffs and furthering Defendant's self interests.

148.    As a result of Defendant's failure to put the interests of the Plaintiffs before her own interests, she breached her fiduciary duties of loyalty and confidentiality owed to Plaintiffs, causing damages to Plaintiffs in an amount to be proven at trial.

149.    These actions caused financial harm to the Plaintiffs.

150.    Plaintiffs' damage claim (to be proven at trial) should be ordered non-dischargeable pursuant to 11 U.S.C §523.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Denial of Discharge Pursuant to 11 U.S.C. §523(a)(6))

151.    Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" through "150" as if more fully set forth herein.

152.    Section 523(a)(6) of the Bankruptcy Code provides as follows:

> (a)    A discharge under 727 . . . of [the Bankruptcy Code] does not discharge an individual debtor from any debt . . .
>
> (6)    for willful, malicious injury by the debtor to another entity   or to the property of another entity.

153.    In late 2008, Plaintiffs stated to Defendant that they were unwilling to continue their services with Defendant unless Defendant upheld her obligations as a financial planner, broker and advisor.

154.    Thereafter, Defendant began a malicious campaign to destroy Plaintiffs.

155.    Due to her role as Plaintiff's financial advisor, Defendant had access to private information concerning Plaintiffs and their financial relationship with NXIVM.

156.    Defendant used certain information about Plaintiffs she had obtained in planning the Extortion Emails.

157.    Upon information and belief, Defendant, while still employed by Plaintiffs, sought advice from an attorney in writing the Extortion Emails.

158.    Plaintiffs and others rebuffed the Extortion demands.

159.    Defendant then continued in her malicious pursuit to damage and destroy Plaintiffs and Plaintiffs' business endeavors by collaborating with Plaintiffs' other adversaries.

160.    Defendant had full knowledge of all pending lawsuits in which Plaintiffs were engaged  as both lawsuits allege theft of financial assets.

161.    In an attempt to destroy Plaintiffs' lawsuit against Plyams (*Plyam* Lawsuit), where Defendant had full knowledge of the circumstances, Defendant improperly (and without consent) gave Plyam's counsel confidential financial information, attorney-client privileged documents and a sworn declaration in support of Plyams (the adversary).

162.    In an attempt to destroy Plaintiff's lawsuit against Joseph O'Hara (*O'Hara* Case), where Defendant had full knowledge of the circumstances, Defendant improperly gave O'Hara's counsel confidential financial information, attorney-client privileged documents, sworn testimony various affidavits and declarations in support of O'Hara.

163.    In an attempt to destroy Plaintiffs, Defendant also turned over confidential financial information and attorney-client privileged documents in a lawsuit to which Plaintiff's are not parties, and used the process of sworn testimony to further slander and damage Plaintiffs.

164.    Defendant has willfully and intentionally injected herself into various lawsuits in order to in order to maliciously injure Plaintiffs and intentionally cause damage to any and all businesses or business interests of Plaintiffs.

165.    In addition Defendant has used other methods to further her malicious campaign against Plaintiffs: she has shared confidential information and knowledge of Plaintiffs' finances with the media, in violation her continuing duty as a fiduciary, in order to injure Plaintiffs and intentionally cause damage to any and all businesses or business interests of Plaintiffs.

166.    Defendant caused a pleading to be filed with the Court which contained numerous false and malicious accusations.

167.    Upon information and belief, Defendant has also shared confidential information and knowledge of Plaintiffs' finances with a group referred to as the "Roses". One of the purposes of this group is to collaboratively cause injury to Plaintiffs and destroy Plaintiffs' business endeavors and interests.

168.    Defendant thereby acted with willfulness and malice with intent to injure the Plaintiffs and sabotage the Plaintiffs' businesses and business interests.

169.    Upon information and belief, Defendant continues to disseminate Plaintiffs' financial and business information.

170.    These actions caused and still cause a significant financial loss to the Plaintiffs.

171.    Defendant's actions were intentional and without justification and excuse.

172.    Defendant is liable to the Plaintiffs for the damages Plaintiffs have sustained, and this liability should be ordered non-dischargeable pursuant to 11 U.S.C §523(a)(6).

## AS AND FOR A THIRD CAUSE OF ACTION

### (Denial of Discharge Pursuant to 11 U.S.C. §727(a)(6)

173.    Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" through "172" as if more fully set forth herein.

174.    Section 727(a)(6) provides that "The court shall grant the debtor a discharge, unless—(6) the debtor has refused, in the case—(A) to obey any lawful order of the court, other than to respond to a material question or to testify."

175.    Defendant failed and refused to comply with the Restraining Order that was entered by the Bankruptcy Court on June 17, 2010.

176.    Within the Restraining Order, "the Debtor, her agents and all those acting on her behalf, are restrained and enjoined from conveying, sharing or disseminating any information from or about the financial transactions or bookkeeping entries relating to Clare W. Bronfman and/or Sara R. Bronfman (individually or any entity owned by them) to any person except the Bronfmans, or their attorneys."

177.    Despite the entry of the Restraining Order, Defendant, in direct violation of the Court's order, has:  a) made written and oral statements about the Plaintiffs' financial transactions and/or bookkeeping at the Section 341 First Meeting of Creditors ("First Meeting"); b) made written statements in a publicly filed Disclosure Statement; c) disseminated information in pleadings with this Court concerning Plaintiffs' financial transactions and/or bookkeeping after entry of its order; and d) on information and belief,

disseminated information to the media concerning the Plaintiffs' financial transactions and/or bookkeeping.

178.    At the First Meeting, instead of directly responding to the question presented regarding her ownership of properties, Defendant instead elaborated on the Plaintiffs' properties and the Plaintiffs' use of their properties.

179.    In addition, when questioned by the United States Trustee at her First Meeting about Defendant's real estate transactions and powers of attorney she held, she redirected her response to the purported use of certain real property in violation of the confidences of the Plaintiffs.

180.    Defendant's statements to the United States Trustee exceeded the scope of the question and were not responsive and violated the Order of June 17, 2010 by disseminating information about the Plaintiffs' finances.

181.    In a letter to the Court filed in the Bankruptcy Court docket on October 26, 2010, Defendant admitted to a conversation with a Vanity Fair reporter in early August 2010 regarding financial transactions of the Plaintiffs.

182.    This communication violated the June 17, 2010 Restraining Order.

183.    In a lengthy Declaration filed by Defendant with the Bankruptcy Court on November 3, 2010 (which did not follow the procedure this court set forth in its September 15, 2010 order), Defendant republished two Declarations which she had previously authored, one dated June 2, 2010 in the *O'Hara* Case and a Declaration in Defendant's Bankruptcy Case filed on June 14, 2010.

184.    Defendant's June 2, 2010 Declaration in the *O'Hara* case was submitted in opposition to Plaintiff's motion to compel Defendant, a non-party witness, to comply

with a subpoena.  Among other things, her Declaration recited the financial management philosophy imparted to Defendant by Plaintiffs, and disclosed details regarding Defendant's management of assets held by the Defendant for Plaintiffs' benefit and for the benefit of Plaintiffs' foundation.

185.    Not only was that June 2, 2010 Declaration republished after the June 17, 2010 Restraining Order, it also violated the California Restraining Order of March 3, 2010 which was replaced by the June 17, 2010 Restraining Order such that any further injunctive relief would be issued by the Bankruptcy Court.

186.    The June 14, 2010 Declaration was ostensibly filed in opposition to the Plaintiff's motion to vacate the automatic stay to enforce the California Restraining Order.  In that Declaration, Defendant described the manner of investment advice to Plaintiffs pertaining to real estate and other ventures, she described the outcome of certain financial ventures of the Plaintiffs, she described the manner of investing and managing of Plaintiff's investments, and she disclosed the name of the Plaintiffs' trust managing firm.

187.    This dissemination of the Plaintiffs' financial information violated the California Restraining Order, the Temporary Restraining Order entered by this Court on June 11, 2010 and by republishing the Declaration on November 3, 2010, Defendant violated to June 17, 2010 Restraining Order.

188.    Each time Defendant published any information regarding Plaintiffs' financial transactions and/or bookkeeping, it is cloaked with a certain presumption because of her fiduciary relationship and intimate knowledge of Plaintiffs' financial and business information.

25

189.    In her publicly docketed Initial Disclosure Statement, the Defendant revealed confidential financial information of the Plaintiffs including, but not limited to, a statement that: "Given that the Plaintiffs were to transfer a large trust fund to [Defendant], she decided not [to] market to replace these clients."

190.    Plaintiffs repeatedly took the position that this portion of the Disclosure Statement should be sealed as it included confidential financial information of the Plaintiffs in violation of the Court's June 17, 2010 Order which sought to protect that information from disclosure.

191.    Only after the Plaintiffs filed a motion for contempt did the Debtor attempt to cure the wrongful disclosure in violation of the Court's June 17, 2010 Order by agreeing to withdraw the Disclosure Statement from the public docket.  However, the public disclosure cannot be undone.

192.    Plaintiffs would not have retained Defendant if Defendant retained an unfettered right to speak freely about their financial and business information without regard to any duties of loyalty or confidentially.

193.    The intentional disclosures made by Defendant were (1) completely improper and unnecessary (throughout the Disclosure Statement, the only former clients the Defendant referenced were the Plaintiffs); and (2) violate the Restraining Order.

194.    Defendant should be denied a discharge pursuant to 11 U.S.C. §727(a)(6).

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Denial of Discharge Pursuant to 11 U.S.C. §727(a)(4)

195.    Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" through "194" as if more fully set forth herein

196.    Section 727(a)(4) of the Bankruptcy Code provides that "The Court shall grant the debtor a discharge, unless—(4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account…."

197.    Defendant's Bankruptcy Petition, Schedules and Statement of Financial Affairs were filed under oath.

198.    Defendant filed Schedule B, a list of personal property, on or about July 1, 2010.

199.    The Defendant has scheduled numerous items of furniture, paintings, and other artwork with individual values and with an aggregate value of approximately $11,500.00.

200.    In fact, the said furnishings, paintings and artwork are much more valuable, and the Defendant has grossly understated the value of this personal property.

201.    Photographs of the interior of the Defendant's residence at 16 Silo Drive, Waterford, New York, were published together with photographs of her residence which Defendant has listed for sale.

202.    Defendant paid approximately $950,000.00 to build the residence approximately two years ago.

203.    In her Statement of Financial Affairs, Question No. 2, the Defendant discloses the sale of one sculpture in 2010 for $9,000.00 and an "estate sale" of $16,000.00.

204.    Defendant's valuation of furnishings, paintings and artwork at an aggregate value of $11,500.00 is understated and is a knowing false oath in connection with the case.

205.   Defendant's valuation of her jewelry is likewise intentionally understated and is a knowing false oath.  For example, Defendant itemizes a diamond ring with a value of $400.00, a diamond necklace with a value of $800.00, and earrings with diamond clips at $400.00.  Given Defendant's extravagant lifestyle, her decision to purchase a $950,000.00 house and to furnish it with expensive artwork, wood carvings and other custom-made, antique or exotic furniture, such a modest valuation of her diamond jewelry at "department store prices" flies in the face of reality and common sense.

206.   Further, Defendant's schedules omitted substantial valuable furnishings as observed by the United States Trustee in her objection to Defendant's Disclosure Statement.  Such omissions, as noted by the United States Trustee include, but are not limited to, a "Liebherr refrigerator," noted in the Defendant's real estate listing.  A Liebherr refrigerator is a premium German refrigerator whose price is generally in the range of $5,000.00 according to price-listings.

207.   Defendant's failure to schedule all her property including custom-made and premium furnishings, as well as grossly undervaluing those items that she did schedule is a knowing false oath.

208.   Defendant should be denied a discharge pursuant to Section 727(a)(4) of the Bankruptcy Code.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (For Injunctive Relief)

209.   Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" through "208" as if more fully set forth herein.

210.    Defendant breached her fiduciary duty to the Plaintiffs by conveying, sharing and/or publishing personal, confidential and financial transactions and information relating to the Plaintiffs.

211.    The Order of this Court entered on June 17, 2010 provides, *inter alia*, "that that the Debtor, her agents and all those acting on her behalf, are restrained and enjoined from conveying, sharing or disseminating any information from or about the financial transactions or bookkeeping entries relating to Clare W. Bronfman and/or Sara R. Bronfman (individually or any entities owned by them) to any person except the Bronfmans, or their attorneys. . . . "

212.    Plaintiffs seek further injunctive relief to permanently restrain Defendant in accordance with the June 17, 2010 Order and extend its relief beyond the conclusion of this Adversary Proceeding or the Defendant's bankruptcy case.

WHEREFORE, the Plaintiffs demand judgment against Defendant as follows:

(1)    On the First Cause of Action, judgment denying the Defendant's discharge from her debt to the Plaintiffs pursuant to 11 U.S.C. §523(a)(4);

(2)    On the Second Cause of Action, judgment denying Defendant's discharge from her debt to the Plaintiffs pursuant to 11 U.S.C. §523(a)(6);

(3)    On the Third Cause of Action, judgment denying Defendant a discharge from her debts pursuant to 11 U.S.C.  §727 (a)(6);

(4)    On the Fourth Cause of Action, judgment denying Defendant a discharge from her debts pursuant to 11 U.S.C. §727(a)(4);

(5)    On the Fifth cause of Action, judgment granting injunctive relief against Defendant consistent with the Order entered by this Court on June 17, 2010;

(6)      Interest, costs and attorneys' fees; and

(7)      Such other and further relief as this Court may deem just and proper.

DATED:  Buffalo, New York
            November 12, 2010

DAMON  MOREY LLP

By:_____ /s/ William F. Savino_____
            William F. Savino, Esq.
            Beth Ann Bivona, Esq.
            Bernard Schenkler, Esq.
            *Attorneys for Plaintiffs*
            *Clare W. Bronfman and Sara R. Bronfman*
            200 Delaware Avenue
            The Avant Building, Suite 1200
            Buffalo, New York 14202-2150
            (716) 856-5500

#1502459

**VERIFICATION**

CLARE W. BRONFMAN declares pursuant to 28 U.S.C. §1746 as follows:

1.  I am one of the named plaintiffs herein and I am fully familiar with the facts of

    this case.

2.  I have reviewed the Complaint and the information contained therein and make

    this verification in support.

3.  I have read the foregoing Complaint and it is true to my knowledge except as to

    matters therein stated to be alleged on information and belief and as to those

    matters, I believe them to be true.

I declare that the foregoing statements are true under penalty of perjury this 12th day
of November  2010.

                                          /s/ Clare W. Bronfman
                                          CLARE W. BRONFMAN

#1502459