Hearing: April 13, 2011 11:00 A.M.
Albany Courtroom

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                    :        Chapter 11
                                                   Case No. 10-12207 REL
BARBARA J. BOUCHEY,                       :

            Debtor                        :

# MEMORANDUM OF LAW IN SUPPORT OF
# ORDER TO SHOW CAUSE
# TO DISMISS CHAPTER 11 CASE

This is a Memorandum of Law on behalf of creditors Clare W. Bronfman and Sara R. Bronfman ("the Bronfmans") in support of the Court's Order to Show Cause dated April 1, 2011 to dismiss or convert the Chapter 11 case of Barbara J. Bouchey, ("the Debtor"), for the failure of the Debtor to properly disclose assets of the estate.

The Bronfmans support dismissal of the Chapter 11 case pursuant to 11 U.S.C. §1112 and 11 U.S.C. §105(a) and join with the Court in seeking this relief.[1] If the Court deems that conversion to Chapter 7 is in the best interest of creditors, then the Court should exercise its discretion to convert the case.

As will be discussed below, the failure of the Debtor to fully disclose material assets in her bankruptcy schedules constitutes "cause" for dismissal pursuant to 11 U.S.C. §1112. Dismissal, rather than conversion to Chapter 7 is more suitable under the circumstances of this case.

---
[1] Plaintiffs have also filed a cross-motion for sanctions under Bankruptcy Rule 9011.

Finally, in dismissing the case, this Court should retain jurisdiction over the Restraining Order entered on June 17, 2010 for at least until May 31, 2011 to allow the Bronfmans to seek a superseding injunction from a non-bankruptcy forum.

### DISCLOSURES ISSUES RE BANKRUPTCY SCHEDULE B

Section 1112(b)(1) of the Bankruptcy Code, 11 U.S.C. §1112(b)(1), provides:

> [O]n request of a party in interest and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

Section 105(a) of the Bankruptcy Code, 11 U.S.C. §105(a), provides that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

See In re State Street Assoc., L.P., 348 B.R. 627 (Bankr. N.D.N.Y. 2006) ([T]he court has the option of dismissing the case for cause sua sponte." 348 B.R. at 642.

Additionally, the Bronfmans, who are parties in interest, join in the request for dismissal under Section 1112 of the Bankruptcy Code.

Although 11 U.S.C. §1112(b)(4) enumerates factors which constitute "cause" for dismissal or conversion, the list of factors "is illustrative, not exhaustive." In re Pal

2

Family Credit Co., Inc., 425 B.R. 1, 5 (N.D.N.Y. 2010) citing In re C-TC 9th Ave. Partnership, 113 F.3d 1304, 1311 (2d Cir. 1997).

As with the bankruptcy case herein, the District Court in Pal Family Credit cited to the finding of the bankruptcy court that "[t]his isn't about paying debt, this isn't about saving jobs, this isn't about anything that we ordinarily see in [chapter] 11. This is about two very specific State Court proceedings that have been brought into [Chapter] 11." 425 B.R. at 6. The Debtor's tepid actions in furthering her Chapter 11 case herein are overshadowed by her continuing focus on her attempt to make public disclosure of the Bronfman's finances that has consumed an inordinate amount of judicial resources. Indeed, the application for compensation by Debtor's latest former attorney, David Cohen Esq. reflects that the majority of his time-charges were rendered in connection with the Restraining Order and matters ancillary, rather than fundamental Chapter 11 issues. During his short-lived tenancy of three and a half months, the Debtor incurred $54,000 in attorneys fees!

Although concerned about the Debtor's lack of focus on the Chapter 11 case, the Court filed its Order to Show Cause to dismiss or convert the case based on the Debtor's filing of an amended Schedule B on March 30, 2011 almost eight months after she filed her initial Schedule B. In the March 30, 2011 filing, the Debtor disclosed for the first time almost $38,000.00 in furniture, antiques and a home theater system. These were the items she proposed to sell in a motion filed on March 28, 2011. Although the Debtor's motion itself (Docket No. 278) refers to Exhibit A, the list was not actually annexed to the motion. The Debtor supplied a copy of Exhibit A to the Bronfmans' counsel, a copy of which annexed as Exhibit A to Exhibit 1, a Request for Entry onto the Premises

3

pursuant to Bankruptcy Rule 7034 and Rule 34 of the Federal Rules of Civil Procedure. The Debtor's Exhibit A shows a subtotal of $45,190 of items proposed to be sold, a Discount of $20,190 and a sale price of $25,000.

The omission and failure to schedule assets has been held "cause" for dismissal or conversion, e.g. In re Canion, 129 B.R. 465 (Bankr. S.D.Tex. 1989): "The debtor has demonstrated a tremendous inability to directly and accurately disclose to the court and creditors his assets upon the filing of his case, as well as his income or asset acquisitions since the date of filing." 129 B.R. at 470. In In re Tucker, 411 B.R. 530 (Bankr. S.D.Ga. 2009), the debtor's failure to file timely and accurate monthly operating reports and the failure to schedule real estate shown on a non-bankruptcy financial statement was cause for conversion. "[T]he current filings reveal that Debtor either cannot or will not file his obligations timely and disclose fully to the Court, to the United States Trustee, or the creditors in his case the full extent of the assets that he holds, the debt that he owes, and the nature and sources of income he receives." 411 B.R. at 535. See also In re Filipek, 35 B.R. 339 (Bankr. D. Hawaii 1983) (Chapter 11 case was dismissed where debtor scheduled property located in the United States but omitted scheduling property located in Canada.)

As noted this Court's Order to Show Cause recites the listing of personal property in the Debtor's Schedule B filed on July 1, 2010. Shortly after the bankruptcy schedules were filed, on July 12, 2010, the United States Trustee conducted a first meeting of creditors pursuant to 11 U.S.C. §341. At that 341 examination, counsel for the Bronfmans specifically questioned the Debtor as to the accuracy of her listing of property in Schedule B:

4

> BIVONA: I just have a very few questions on the schedules and I understand that they are going to be amended, that there is still more information coming, that you haven't filed a statement of financial affairs but that will be filed.
>
> DEBTOR: Uhha.
>
> BIVONA: **Okay, will you be further amending Schedule B or A, the personal property or real property, or do you believe that contains all of your assets?**
>
> CROAK: Why don't you take a look at it, okay.
>
> DEBTOR: **I have listed everything that I own. Are you aware of anything that's missing?**
>
> BIVIONA: **I'm just asking.**
>
> DEBTOR: **No, this is everything.**

**(Emphasis added.)**

Thus, in her 341 examination under oath, the Debtor made no reservations but unequivocally corroborated the accuracy of the listing of property in her Schedule B filed less than two weeks earlier and in doing so, made a false oath.

The Debtor's initial Disclosure Statement (Docket No. 42) was withdrawn and stricken from the docket (Docket No. 69) because, inter alia, it disclosed confidential financial information of Bronfmans protected by the June 17, 2010 Restraining Order. The Debtor then filed another Disclosure Statement on September 12, 2010 (Docket No. 112). At page 10 of the new Disclosure Statement, the Debtor's Liquidation Analysis again relied on and purportedly corroborated the accuracy of her schedules, including Schedule B.

5

C. Liquidation Analysis.

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. Because this is an individual case and because the Debtor's business activity involves only the provision of personal services, **the Debtor believes the liquidation value of the business is limited and may not be sellable** although she has for book purposes placed a value of 2 years net income on her business. **Attached hereto are her schedules A, B, C and D which clearly indicate the liquidation values.** Debtor estimates she can obtain nothing beyond the liens on her real estate. **The litigation she plans with the Bronfmans and Nxivm may not result in any substantial payment for some considerable time and is only in the early stages of consideration.**

(Emphasis added.)

The United States Trustee filed an Objection to the Adequacy of Information in the Debtor's Disclosure Statement and Plan on September 28, 2010 (Docket No. 130). The United States Trustee pointed out that the Debtor's liquidation analysis was inadequate and it appeared to overlook substantial personal property assets as depicted in a real estate listing:

> 26. The Disclosure Statement lacks an adequate liquidation analysis. The debtor owns numerous items such as art work, sculpture, and household furnishings. According to the real estate listing for her residence located at 16 Silo Drive, Clifton Park, the house is described as a "Showcase Award Winner this great home is available now! Custom features: gourmet kitchen, rare Italian granite counters, liebherr refrig, custom appliances . . . **theater w/bar** . . . custom home furnishings." [Internet web citation omitted.]
>
> 27. According to the debtors Schedule B, she claims to own less than $12,000 in personal property. **Several of the items listed above, and shown in photographs of the RealtyUSA website, are not disclosed on the Schedule B.**

6

> It is the position of the United States Trustee, therefore, that for liquidation purposes the debtor has failed to value all of her assts such that creditors cannot make an informed judgment as to what they would achieve in a straight liquidation.

(Emphasis added.)

As the Order to Show Cause pointed out, on November 28, 2010 the Debtor filed an Amended Schedule B to correct a corporate name and list some personal loans made by the Debtor. She did not add to the list of personal assets.

On December 10, 2010 Debtor belatedly filed her Operating Report for the month of June 2010 and annexed a copy of Schedule B of her bankruptcy schedules. The documents annexed to the operating report Operating Report were filed under penalty of perjury. This is another false oath.

By letter of February 20, 2011 (Exhibit 2 annexed hereto) (more than four months after the United States Trustee filed its Objection to the Adequacy of the Disclosure Statement), the Debtor's new counsel, David Cohen, Esq. wrote to the United States Trustee "to clarify certain information with respect to the Debtor's assets, especially with respect to the comments of the United States Trustee in paragraphs 26 and 27 of the U.S. Trustee's objection to the Debtor's Disclosure Statement." However, all that was "clarified" was that certain rugs, drapery and works of art depicted on the website were "on temporary loan," that the Debtor has no interest in those items and the Liebher refrigerator ("more valuable than a normal refrigerator") was "built in." Again, the Debtor made no attempt to disclose the items of personal property including the home theater which the United States Trustee pointed out until the Debtor saw fit to list this

7

property in a March 30, 2011 Amended Schedule B when she desired to sell those items to a third party.

As noted in the Order to Show Cause, on November 12, 2010, the Bronfmans filed their adversary complaint (A.P. No. 10-90156) objecting to discharge inter alia pursuant to 11 U.S.C. §726(a)(4) for filing a false oath by understating the value of personal property in her Schedule B and in omitting valuable personal property.

In the hearing conducted on March 31, 2011 which set the Order to Show Cause, this Court emphasized the Debtor's duty of "disclosure, disclosure, disclosure." It is apparent she has taken this duty lightly.

The Debtor's Amended Petition appears to state that her (former) attorney was at fault by filling out the form but not listing "household furnishings." In her expanded opposition to the Order to Show Cause, the Debtor places all the blame on both her former attorneys, refusing to accept any responsibility for her actions (or inaction).

In In re Dubrowsky, 206 B.R. 300 (Bankr. E.D.N.Y. 1997) aff'd 244 B.R. 560 (E.D.N.Y. 2000), the bankruptcy court rejected an argument by the Debtor on a motion to impose Rule 9011 sanctions that the omissions and false statements in the bankruptcy schedules were the fault of counsel:

> In this case, the Defendant, not his bankruptcy counsel, signed his schedules and statement of financial affairs, and his conduct falls within Bankruptcy Rule 9011. There is no advice of counsel defense where the client misrepresents the facts to his counsel. In any event, **as this Court found in its decision, the Debtor is a knowledgeable businessman who clearly had the mental capacity to understand the questions posed on the petition, and before signing a document which was not accurate, he had an obligation to review and correct false statements.**

206 B.R. at 37. (Emphasis added.)

Likewise, the Debtor is a Certified Financial Planner and thus has sophistication in financial matters. Question 4 of the Statement of Financial Affairs requests the Debtor to list "household goods and furnishings including audio, video and computer equipment." That is not a complex question requiring an interpretation by counsel. The Debtor did not schedule $38,000 in household furnishings including a home theater system ("audio, video and computer equipment") until she wanted to sell those items. The contents of Debtor's house is within her own knowledge, not the knowledge of counsel, and requires her to make a truthful disclosure. The Debtor signed the Schedules under penalty of perjury. If she believed it was not accurate, she should not have signed the document. She misled the United States Trustee and the Bronfmans' counsel by her unequivocal statement at the first meeting of creditors on July 12, 2010 (less than two weeks after the Schedules were filed) that the list of assets was accurate and that "I listed everything I own." That statement was not true.

## ADDITIONAL DISCLOSURE ISSUES RELATING TO ATTORNEY COMPENSATION

The Bronfmans previously objected to the application for compensation filed by Debtor's first former bankruptcy attorney, Richard Croak Esq, on the grounds, inter alia, that he failed to explain the circumstances of the retainer he received, the source of payment, and the subsequent disbursements to other professionals without Court approval. Among other things, the Bronfmans pointed out at least four versions under oath of the amount of the retainer, when it was received and whether it was disbursed.

The Debtor cannot place all the blame for the misstatements on her attorney. Thus, for example, the Rule 2019 Disclosure of Compensation Form signed by Richard Croak (dated June 30, 2010) states that the balance due for his compensation is $26,000 of which he received none to date, and that the source of compensation paid and to be paid was the debtor. Further he states he has not agreed to share his compensation with any other person.

The Debtor did not file a Monthly Operating Report for the month of June 2010 until December 10, 2010 (Docket No 201). Her Journal lists a credit card charge in the amount of $16,000 on June 11, 2010 to Richard Croak on US Airways Mastercard. That was the day the bankruptcy petition was filed. US Airways Mastercard was listed as a creditor owed $57,000. (This creditor was first listed as Barclay's Bank in her original Schedule F, then changed to US Airways/Mastercard/Barclay's Bank in the June 24, 2010 Amended Schedule F.) (Docket No. 24).

Thus, not only did Mr. Croak misstate the fact under oath that he had not yet received any payment as of June 30, 2010 he states the source of payment (both paid and to be paid) was the Debtor. It was a third party, the US Airways' Mastercard which became a creditor as a result of this payment to Richard Croak. (The source of the other $10,000 paid to Mr. Croak is still not clear.)

As noted, the Rule 2019 Statement also states Mr. Croak has not agreed to share any of the compensation with any other profession, yet in later filings, he acknowledges that $20,000 of the compensation was to be retained for other professionals and that such funds were disbursed. Further, PCA Communications, allegedly a public relations firm, stated under oath that it received $10,000 pre-petition.

The Rule 2019 Statement was annexed to the Bankruptcy Schedules filed on July 1, 2010. The Debtor signed her Schedules under penalty of perjury on June 30, 2010 attesting that she has read the attachments and they are true and correct. This was false.

Additionally, at Statement of Affairs Question No. 9, the Debtor states she paid Richard Croak $26,000 on **June 10, 2010**, the day before the bankruptcy filings, quite obviously intended to misstate the true date of payment to make it appear pre-petition. As noted according to the Operating Report, the $16,000 credit card payment to Richard Croak was made on June 11, 2010.

Further, Question No. 9 requests the name of the payor, if not the debtor. The Debtor did not disclose the source of payment was a third-party, US Airways/Mastercard.

The financial transactions involving the Debtor's second former attorney, Richard Cohen, Esq. are no less deceptive.

Mr. Cohen has now filed an application for compensation. In Mr. Cohen's application, he states that he received (post-petition) $16,000 of a $17,500 retainer promised to him. His application for retention, filed November 19, 2010 discloses that the Debtor's company promised to pay his retainer.

Nowhere in any of the Debtors' monthly operating reports does she disclose the $16,000 payment to David Cohen, Esq. If the payment was in fact made by Barbara J. Bouchey Asset Management Inc. in November 2010, it should have been disclosed in the November Operating Report as a payment by a third party on behalf of the debtor. That portion of the form was left blank. Further, the disbursement of legal fees by the corporation was presumably a loan to the debtor, but the existence of such a post-petition loan was not disclosed let alone an application for financing under 11 U.S.C. §364 made

to the Court. The Debtor's operating reports disclose payments made **to the Debtor** on behalf of her corporation that she then pays over to the corporation. But no operating report discloses any payments made **on behalf of the Debtor to third parties**. While Barbara J. Bouchey Asset Management, Inc. is not a debtor, the Debtor's reliance on her shadow corporation to pay her bills without disclosing any details further compounds the lack of over-all disclosure in her bankruptcy case.

See In re Tucker, supra, in which the Debtor purportedly received undisclosed advances from a third party during the course of his bankruptcy case. "The point here is only that these sums of money are being transferred by third parties to the debtor without full, timely disclosure to the court and parties in interest, or, if required, approval by the court for engaging in some form of post-petition financing. . . . In this Court's view, the above is sufficient to constitute cause to convert to dismiss this case under 11 U.S.C. §1112(b)(4)(B)." 411 B.R. at 533, fn. 6.

## OTHER INCONSISTENCIES WITH THE
## MATRIMONIAL NET WORTH STATEMENT

The Debtor's husband, Todd Flanigan, filed an objection on April 5, 2011 to the Debtor's proposed sale of the marital real estate at 16 Silo Drive, Waterford, New York. Annexed to his objection was a copy of the Debtor's Statement of Net Worth pursuant to Domestic Relations Law §236. The Statement, sworn to by the Debtor on January 12, 2010 (six months before her Chapter 11 filing) purports to be accurate as of December 10, 2009.

Among the liabilities listed (on page 10) is a $29,000 past due obligation for state and federal taxes for 2008. Yet the Debtor's Statement of Affairs Answer to Question 1

states that the Debtor's income from employment or operation of business for 2008 was $22,393. How did the Debtor accrue an unpaid tax obligation of $29,000 with an income of only $22,393 unless she has not disclosed her true income in 2008.

The loans and other claims listed in her amended bankruptcy schedules at Question No. 21 of her Statement of Financial Affairs aggregate almost $2.0 million, yet there is no disclosure of any such -- or any -- loans or accounts receivable in her Matrimonial Net Worth statement (page 9).

The Debtor's Statement of Financial Affairs as amended March 30, 2011 lists and quantifies a claim against Keith Raniere and Nancy Salzman in the amount of $1,650,000. This is almost identical to the amount listed in on page 9 of her Matrimonial Net Worth statement as the capital contribution ($1,637,497.00) for Barbara Bouchey Asset Management, Inc. which she claims to have acquired in 1985. As noted, the Matrimonial Net Worth Statement did not disclose any claims against Keith Raniere and Nancy Salzman.

These inconsistencies of statements under oath, as well as outright omissions from Schedule B notwithstanding numerous opportunities to amend prior to the Debtor's proposed sale of the personal property, demonstrate that the Debtor has not been truthful in her bankruptcy filings.

In In re State Street Associates, L.P., this Court noted: "Chapter 11 is not a game to be used for sport against creditors for the benefit of insiders . . . It functions as a shield, in exchange for certain sacrifices, such as **honest and continued public disclosure**, and is never to be used as a sword." 348 B.R. at 638 (Emphasis added.) The Debtor has

abandoned those fundamental principles and should not be rewarded with bankruptcy protection. The case should be dismissed.

## THE CASE SHOULD BE DISMISSED AND NOT CONVERTED TO CHAPTER 7

The Court has discretion to either convert a Chapter 11 case to Chapter 7 or dismiss the case under Section 1112 of the Bankruptcy Code. In re Sal Caruso Cheese, Inc., 107 B.R. 808 (Bankr. N.D.N.Y. 1989) ("The bankruptcy court has wide discretion to determine if cause [under Section 1112] exists and how to ultimately dispose of the case." 107 B.R. at 817.). Here, there is undisputably "cause" for conversion or dismissal, but conversion serves no purpose. The only remaining real estate has no equity. The only tangible assets, if there are any assets, will likely be sufficient to pay only a portion of administration claims of professionals. (David Cohen, Esq. has filed an application for compensation in the amount of $54,000.00.)

The non-tangible assets include the value of the Debtor's business that is solely dependent on the Debtor; there does not appear to be any appreciable clientele since the income generated from the business is minimal. Debtor's own Disclosure Statement describes her corporation as "not sellable." The Debtor's schedules also list a number of unliquidated and highly speculative litigation claims that are not even listed in her Matrimonial Net Worth Statement filed six months before her bankruptcy case was filed. The claims are bogus, and a Chapter 7 Trustee would likely not undertake the prosecution of these claims.

In State Street Assoc. L.P., the Bankruptcy Court ordered dismissal rather than conversion under Section 1112 reasoning as follows:

14

> The administrative expenses that would be incurred in getting a chapter 7 trustee "up to speed" should the case be converted could well exceed the claims of the remaining unsecured creditors. Dismissal of the case will enable UDC and HUD (the largest unsecured creditors) to pursue their rights in other forums. Furthermore, allowing the parties to proceed in alternative forums, and any delay that may entail, will not impact greatly on the other unsecured creditors in the case who have not participated in the proceedings over the past two years. It would appear that the only constituency that may be seriously impacted by dismissal of the case will be the class of equity holders and limited partners of the Debtors, and the Code affords them little in the way of protection to cause his Court any concern.

348 B.R. at 642.

The Bankruptcy Court in State Street Assoc. also observed that there was no creditors' committee and that "the case is basically a two party dispute from which any recovery is likely to be de minimus given the extent of UDC's security interest." 348 B.R. at 642, fn. 27. Likewise, the Debtor's Chapter 11 filing on the day of her intended deposition in the California action commenced by the Bronfmans and her subsequent and almost exclusive attention to the Bronfmans and to NXIVM rather than her Chapter 11 case demonstrates that this is really a two-party dispute filed in bad faith (which itself is "cause" for dismissal or conversion) best handled in a non-bankruptcy forum.

### CONTINUED JURISDICTION TO ALLOW TRANSITION
### FOR THE RESTRAINING ORDER

As noted, the Bronfmans support and join in the dismissal of the Chapter 11 case, but subject to the Court retaining jurisdiction for a period of time to allow the Bronfmans to transition the June 17, 2011 Restraining Order to a non-bankruptcy court. The Debtor should not benefit from, nor should Bronfmans be prejudiced by the dismissal of the Chapter 11 bankruptcy case without some time-period to allow them to seek appropriate

restraints in another non-bankruptcy forum against the Debtor to prevent the disclosure of their personal financial information.

It is established in the Second Circuit that the bankruptcy court retains the discretion to continue an adversary proceeding, either under the "related to" jurisdiction or under the "core" jurisdiction after the dismissal of a bankruptcy case. In re Porges, 44 F.3d 159, 162 (2d Cir. 1995); In re Millenium Sea Carriers, 458 F.3d 92 (2d Cir. 2006). In deciding whether to retain jurisdiction, the court is to consider the factors of "judicial economy, convenience to the parties, fairness and comity." Porges, 44 F.3d at 163.

Section 349(b) of the Bankruptcy Code, 11 U.S.C. §349(b), provides that a dismissal, inter alia, "vacates any order, judgment or transfer ordered. . ." However, subsection (b) is prefaced: "Unless, the court, for cause, orders otherwise . . ." The legislative history of Section 349 states that the purpose of Section 349, on dismissal, was to "undo the bankruptcy case as far as practicable" but that "where there is a question of the scope of the subsection, the court will make appropriate orders to protect the rights acquired in reliance on the bankruptcy case." H.R. Rep. 95-595 at 338 (1977) cited by In re Wiese, 552 F.3d 584 (7th Cir. 2009).

In Wiese, the debtors negotiated with a secured creditor to consent to a Chapter 12 plan. The debtors released lender liability claims and the creditor gave up a lien on escrowed funds thus losing the ability to further collect those funds. Shortly after confirmation, the debtor moved to dismiss the case. The Court of Appeals affirmed the bankruptcy court's ruling that the plan remained binding on the parties notwithstanding dismissal. "The Bank's agreement to give up the lien was made in reliance on the bankruptcy case, and when the Wieses decided to dismiss the case, it was not

16

inappropriate for the bankruptcy court to consider the harm that dismissal caused to the Bank." 552 F.3d at 590.

In In re Gonic Realty Trust, 909 F.2d 624 (1st Cir. 1990), the Court of Appeals affirmed the bankruptcy court's decision to dismiss the Chapter 11 case but retain an escrow fund pending the outcome of a state court suit by a former attorney for payment of the funds. The bankruptcy court determined that "a return of the funds to [the debtor] would not be fair [to the attorney] and that retaining the funds would not affect [the debtor.]" 909 F.2d at 627.

Likewise, in In re Roma Group, Inc., 137 B.R. 148 (Bankr. S.D.N.Y. 1992), the bankruptcy court dismissed a Chapter 11 case at a time when the debtor had commenced an adversary proceeding for equitable subordination of a creditor's claim and to enjoin the creditor's sale of disputed property. The parties had consented to the injunction and expedited discovery but the case was dismissed during the trial. The bankruptcy court noted that equitable subordination was no longer an issue after dismissal, but since the trial was almost completed, the bankruptcy court held it would retain jurisdiction over the suit for money damages (as well as the injunction) "in the interest of judicial economy, fairness and convenience to the litigants." 137 B.R at 151.

Finally, in In re Millenium Sea Carriers, 354 B.R. 674 (Bankr. S.D.N.Y. 2006), on remand from the Court of Appeals, the bankruptcy court determined that, after dismissal of the Chapter 11 case, the Porges factors warranted continued jurisdiction over an adversary proceeding regarding a bankruptcy sale including the continuation of an injunction against foreign arbitration.

17

Here, the June 17, 2010 Order was entered into with consent of the Debtor. It replaced an existing Temporary Restraining Order issued by the California Superior Court and provided for the dismissal without prejudice of the California proceeding. The Bankruptcy Court injunction was to remain in place until, inter alia, "closure of the Chapter 11 case."

While the adversary proceeding commenced by the Bronfmans not only objects to discharge and dischargeabily of a debt (matters which will be moot upon dismissal of the Chapter 11 case), it also seeks a continuation of injunctive relief against the Debtor to prohibit disclosure of the Bronfmans' financial transactions and financial information. Had the California action been simply stayed during the Chapter 11 case, the Temporary Restraining Order would still have been in place upon dismissal of the Chapter 11 case. Relying on the Debtor's consent and this Court's jurisdiction, the California action was dismissed without prejudice.

While initially the imposition of the injunction was a "related to matter" involving state law issues, the superseding Bankruptcy Restraining Order became "core" and part of the administration of the estate. In either event, this Court has the jurisdiction to continue the efficacy of the Restraining Order until the Bronfmans are able to seek such relief in a non-bankruptcy forum whether in California or elsewhere. The Bronfmans' request that this Court retain jurisdiction until May 31, 2011 but, they cannot assure that a non-bankruptcy forum will swiftly address the relief and thus any specific time-period should be without prejudice to further applications for extensions.

Without the continued exercise of jurisdiction, the Bronfmans will be prejudiced by dismissal of the Chapter 11 case. The Debtor suffers no harm by maintaining the

status quo and indeed, there is no legitimate reason why the Debtor needs to immediately make further disclosures of the Bronfmans' finances in violation of her continued fiduciary duty of confidentiality. In the exercise of discretion, any dismissal of the Chapter 11 case should be conditioned on the continued efficacy of the June 17, 2010 Restraining Order until the Bronfmans have the opportunity to seek like relief in a non-bankruptcy forum.

## CONCLUSION

For the reasons set forth herein and upon the argument on the return date of the Order to Show Cause, the Bronfmans request dismissal of the Chapter 11 case pursuant to 11 U.S.C. §1112 subject to retention of jurisdiction over the June 17, 2010 Restraining Order until at least May 31, 2011 to allow the Bronfmans the opportunity to seek injunctive relief in a non-bankruptcy forum.

Respectfully,
DAMON MOREY LLP

By /s/ Bernard Schenkler
   William F. Savino, Esq.
   Bernard Schenkler
*Attorneys for Clare W. Bronfman
and Sara R. Bronfman*
The Avant Building, Suite 1200
200 Delaware Avenue
Buffalo, New York 14202
(716-856-5500)

Dated: Buffalo, New York
       April 11, 2011

#1568708